IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SHEILA VANN REESE,
     Plaintiff,

vs.                                        Case No. 5:14cv59/MW/EMT

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,
     Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the

authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this

court relating to review of administrative determinations under the Social Security Act

("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court

pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the

Commissioner of Social Security ("Commissioner") denying Plaintiff's application

for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C.

§§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI

of the Act, 42 U.S.C. §§ 1381–83.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

Upon review of the record, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; therefore, the decision of the Commissioner should be reversed and remanded.

## I.    PROCEDURAL HISTORY

On August 2, 2006, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning October 20, 2003 (Tr. 257).[2]   Her applications were denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").   ALJ Gerald F. Murray held a  hearing on November 4, 2008, and on December 15, 2008 he issued a decision in which he found Plaintiff not disabled as defined under the Act (Tr. 257–68).   On April 6, 2009, the Appeals Council ("AC") denied Plaintiff's request for review, but on May 21, 2010, the AC vacated its decision and remanded the case for a new hearing (Tr. 245, 249–53).   On September 20, 2010, ALJ Murray held the hearing, following which he issued a new unfavorable decision on October 12, 2010 (Tr. 111, 274–87).   On August 14, 2012, the AC again remanded the case, and on

---

[2] All references to "Tr." refer to the transcript of Social Security Administration record filed on December 30, 2015 (ECF No. 30).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

March 28, 2013, ALJ Jeffrey Marvel, held another hearing (Tr. 56, 288–90).  On April 12, 2013, the ALJ issued another decision finding Plaintiff not disabled (Tr. 32–45).  On November 27, 2013, the AC issued a decision modifying the ALJ's decision, agreeing that the Plaintiff was not disabled prior to March 2, 2011, but finding that the Plaintiff became disabled beginning on March 2, 2011, the date upon which she reached 50 years of age (Tr. 17–19).  The decision of the ALJ, as modified by the AC's decision, stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

## II.    FINDINGS OF THE ALJ AND THE AC

On April 12, 2013, the ALJ made several findings relative to the issues raised in this appeal (Tr. 32–45):

1)    Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008[3];

2)    Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 20, 2003, through her date last insured of December 31, 2008;

---

[3]  Thus, the time frame relevant to Plaintiff's claim for DIB is October 20, 2003 (date of alleged onset), through December 31, 2008 (date last insured).  The time frame relevant to her claim for SSI is August 2, 2006 (the date she applied for SSI) through April 12, 2013 (the date the ALJ issued his decision).  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

3)    Through the date last insured, Plaintiff had the following severe impairments: status post right shoulder and right elbow arthroplasty; lumbar facet syndrome; fibromyalgia; major depressive disorder without psychotic features; anxiety; and rheumatoid arthritis (20 C.F.R. §§ 404.1520(c) and 416.920(c));

4)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subp't P, App'x 1 (20 C.F.R.. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5)    Through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  She could occasionally lift 20 pounds and frequently lift 10 pounds.  She could stand or walk for two hours in an eight-hour workday and sit for six[4] hours in an eight-hour workday. She could frequently reach with the right upper extremity.  She could have only occasional contact with the public, coworkers, or supervisors. She could do more than simple, routine, repetitive work.  She could work at no more than a regular pace;

6)    Plaintiff was unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965);

7)    Plaintiff was born on March 3, 1961, and was 43 years old, which is defined as a younger individual aged 18–44, on the alleged disability onset date.  Plaintiff subsequently changed age category to a younger individual aged 45–49 (20 C.F.R. §§ 404.1563 and 416.963);

8)    Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964);

---

[4]  While the ALJ's finding reads that Plaintiff can "sit for sit hours in an eight hour workday," the court fairly surmises from other areas of the decision that the ALJ meant to say "sit for six hours in an eight hour workday."  *See* Tr. 40, 43.

9)  Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not she had transferable job skills (*see* SSR 82-41 and 20 C.F.R. part 404, Subp't P, App'x 2);

10)  Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11)  Plaintiff was not  under a disability, as defined in the Social Security Act, from October 20, 2003, through April 12, 2013, the date of the ALJ's decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

On November 27, 2013, the AC issued its decision and made the following findings, which modified the ALJ's decision in part:

1)  The claimant was last insured for disability benefits on December 31, 2008;

2)  The claimant had not engaged in substantial gainful activity since the alleged onset date of October 20, 2003;

3)  The claimant had severe impairments of status post right shoulder and right elbow arthroplasty, lumbar facet syndrome, fibromyalgia, major depressive disorder without psychotic features, anxiety, and rheumatoid arthritis;

4)  The claimant's mental impairments had resulted in mild limitation in activities of daily living; moderate restriction of social functioning and of concentration, persistence or pace; and no episodes of decompensation;

5)     The claimant did not have an impairment or combination of impairments that met or equaled the criteria of an impairment listed in the regulations at 20 C.F.R. Part 404, Subp't P, App'x 1;

6)     The claimant retained the residual functional capacity to perform a limited range of sedentary work, as defined in 20 C.F.R. § 416.967(a). She could occasionally lift 20 pounds and frequently lift 10 pounds. She could stand or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday. She could frequently reach with the right upper extremity. She could have only occasional contact with the public, coworkers, or supervisors. She could not do more than simple, routine, repetitive work. She could work at no more than a regular pace;

7)     The claimant had medically determinable impairments that could reasonably have been expected to cause her alleged symptoms. However, the claimant's symptoms were not so persistent and intense that they were of disabling severity;

8)     The claimant was unable to perform her past relevant work;

9)     The claimant was born March 3, 1961, and was 42 years old, which is defined as a "younger individual age 18–44," on the alleged onset date of October 20, 2003. The claimant subsequently changed age category to a "younger individual age 45–49." On March 2, 2011, the claimant "attained" age 50 and became a person "closely approaching advanced age";

10)    The claimant has at least a high school education and is able to communicate in English;

11)    The claimant's past relevant work did not provide transferable skills, because her residual functional capacity limited her to unskilled work;

12)    Prior to March 2, 2011, considering the claimant's age, education, lack of transferable skills, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform, within the framework of Medical Vocational

Rules 201.28 and 201.21.  These jobs included packer, assembler, and addresser;

13) Beginning on March 2, 2011, the claimant attained age 50, her age category changed to a "person closely approaching advanced age," and Medical Vocational Rule 201.14 applied.  Medical Vocational Rule 201.14 directs a finding of "disabled" for a person of the claimant's age category, education, lack of transferable skills, and residual functional capacity for sedentary work; and

14) The claimant was disabled, beginning March 2, 2011, but not before that date.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied,

the Commissioner's decision will not be disturbed if in light of the record as a whole

the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g);

Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote

v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a

scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison

Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or

substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates

against the Commissioner's decision, the decision must be affirmed if supported by

substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

    The Act defines a disability as an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify

as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[5] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

---

[5] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   DISCUSSION

First,[6] Plaintiff contends that, while the ALJ determined that she had moderate limitations in the areas of concentration, persistence, and pace (Tr. 37), these limitations were not accounted for in the residual functional capacity ("RFC")

---

[6] The court finds it better organized to address Plaintiff's third claim first, followed by her first and second claims.

assessment, nor were these limitations included in the ALJ's hypothetical questions to the Vocational Expert ("VE").

However, Defendant asserts that the ALJ's RFC assessment is not the proper target of inquiry because the AC, in its decision of November 27, 2013, did not adopt the ALJ's RFC assessment—at least not fully—but made its own findings.  Because the duty of final decision-making has been delegated to the Appeals Council, federal courts must review the Appeals Council's final decisions.  Parker v. Bowen, 788 F.2d 1512, 1516–17 (11th Cir. 1986); *see also* Blankenship v. Bowen, 801 F.2d 1271, 1273 (11th Cir. 1986); Graham v. Bowen, 790 F.2d 1572, 1573–75 (11th Cir. 1986).  "The ALJ's findings and conclusions represent recommendations to the Secretary; the Council is free to independently weigh the evidence and arrive at its own findings and conclusions.  Oldham v. Secretary of Health and Human Services, 718 F.2d 507, 510 (1st Cir. 1983).  Thus, in areas where the AC has modified the ALJ's decision, the court reviews the findings of the AC and does not address those related findings in the ALJ's decision.  *See* Kelly v. Commissioner of Social Sec., 401 F. App'x 403, 408 & n.8 (11th Cir. 2010).

While Plaintiff's argument may not have been appropriately framed, the gist of that argument, whether any limitations in concentration, persistence, and pace were properly incorporated in the decision against her, nonetheless remains before the

court.  It is important, however, to determine the extent to which the AC modified the

ALJ's findings, since wherever that is the case, the court should look to the findings

of the AC instead of the ALJ.

Initially, the court notes the statement in the AC's opinion that it generally

agreed with the findings of the ALJ.  Beyond that, to compare the two RFC holdings,

the court notes two major differences: 1) whereas the ALJ found Plaintiff to have the

RFC to perform sedentary work, the AC found her able to perform only "a limited

range" of sedentary work; and 2) whereas the ALJ found Plaintiff able to do more than

simple, routine, repetitive work, the AC found she could *not* do more than simple,

routine, repetitive work.[7]  The second difference is compounded by the fact that, in its

earlier procedural letter to Plaintiff explaining the purpose of the most recent remand

to the ALJ (which would result in the hearing and decision currently at issue here), the

AC identified the ALJ's statement as a scrivener's error:

> The residual functional capacity, at Finding 5, contains two scrivener's
> errors that we plan to correct.  We plan to correct the residual functional
> capacity to say that you can sit for six (rather than "sit") hours; and we

---

[7] For the sake of completion, the court finds the following findings of the AC to essentially
replicate those of the ALJ:  that she could occasionally lift 20 pounds and frequently lift 10 pounds;
that she could stand or walk for two hours in an eight-hour workday and sit for six hours in an eight-
hour workday; that she could frequently reach with the right upper extremity; that she could have
only occasional contact with the public, coworkers, or supervisors; and that she could work at no
more than a regular pace.

plan to correct the residual functional capacity to say that you cannot
(rather than "can") do more than simple, routine repetitive work.

 (Tr. 488).

However, two other instances in which the ALJ made this "can do" statement

make it highly doubtful that this was simply a scrivener's error.  First, in the ALJ's

decision, he not only makes the allegedly erroneous statement in Finding 5 of his

formal RFC assessment, but he also repeated it in more detail during the body of his

explanation under Finding 5:

> The limitation to work at no more than a regular pace (in contrast to
> production rate pace) addresses the claimant's moderate limitations
> maintaining concentration, persistence, or pace.  She can manage money,
> including paying bills, counting change, handling a savings account, and
> using a checkbook/money orders, and she drives, *so she can do more
> than simple, routine, repetitive work.*

(Tr. 43) (emphasis added).  Second, and even more pivotal to the court's conclusion,

is that the ALJ repeated the statement in the same manner during his questioning of

the VE:

> Now let's assume a hypothetical individual with the age, education and
> past work experience of this Claimant . . . .  This individual *is able to do
> more than simple, routine, repetitive work*, with—but only occasional
> contact with the public, co-workers, or supervisors, and at no more than
> a regular pace.

(Tr. 87) (emphasis added).  In response to this hypothetical, to which the ALJ added

physical limitations with walking, standing, and reaching, the VE opined that such an

individual would be able to work as a sedentary packer, an assembler, and an addresser (Tr. 92–93).

The added importance of the VE's job findings is that they form the basis of the job findings in the ALJ's decision, and they appear to form the basis of the same findings in the AC's decision.  Whereas the ALJ clearly relied on the VE's testimony to conclude that these jobs were available for Plaintiff to perform (Tr. 44–45), the AC's reliance is not so clear or overt:

> Prior to March 2, 2011, considering the claimant's age, education, lack of transferable skills, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, within the framework of Medical Vocational Rules 201.28 and 201.21. These jobs include packer, assembler, and addresser.

(Tr. 19, Finding 12).

Nevertheless, despite Defendant's assertions to the contrary, the court finds that the AC at least partially adopted the ALJ's RFC holding and relied on the VE's testimony.  While the AC's decision contained its own findings, to a great extent it mimicked the findings of the ALJ, including the same finding that Plaintiff had moderate difficulties with concentration, persistence, and pace.  In one of the two areas where there were differences—the limitation to simple, routine, repetitive work—the difference was perceived simply as a scrivener's error.

Defendant might argue that the AC, by generally referencing the Medical Vocational Rules, or "the grids" as they are commonly called, relied solely on the grids and therefore not on the testimony of the VE. However, it does not follow that the AC placed sole reliance on the grids. First, usage of the grids obviates the need to independently evaluate whether sufficient jobs exist in the economy that a claimant could perform. Rather, once a claimant's RFC is determined to coincide with a particular category, the other factors of age, education, and previous work experience are assessed in order to determine, by simple reference to the grid tables, the ultimate question of whether or not the claimant is disabled. *See* 20 CFR § 404, Subp't P, App'x 2, section 200.00. Thus, had the AC wholly relied on the grids for its decision, there would have been no need for it to also hold that the sedentary jobs of packer, assembler, and addresser existed in sufficient numbers for Plaintiff to perform. Second, the AC also indicated that its holding was "within the framework" of the grids, thus suggesting that the AC put the grids to its familiar, alternative use: that of "a framework to evaluate vocational factors." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also See* 20 C.F.R. § 404, Subp't P, App'x 2, section

200.00(d).[8]  Generally, this involves the introduction of further evidence, typically through VE testimony.  *See id.*[9]

Accordingly, the court concludes that the AC's decision was made with reference to the VE's testimony regarding available jobs for Plaintiff given her functional capacity, and the practical effect of this is that the manner in which the AC relied upon the VE's testimony was in error.  Perhaps because the AC mistakenly identified as a scrivener's error the ALJ's RFC finding that Plaintiff could do more than simple, routine, repetitive work, it apparently assumed that the question posed to the VE described a hypothetical person who could *not* do more than that type of work.  As previously noted, however, this was not the case, and because the jobs identified by the VE related to an individual who could do a greater quantum of work, it is reasonable to conclude that the more work-restricted individual that the AC had in mind might have changed the VE's results as to available jobs.  Hence, the VE's

---

[8] Indeed, a Westlaw query searching for "grids" within six words of "framework" conducted by the undersigned produced 324 "hits" in the Eleventh Circuit database alone, and cursory review of these cases indicated they were consistently Social Security matters dealing with usage of the "grids" currently under discussion.

[9] In certain situations where nonexertional limitations are not so severe as to preclude a wide range of employment at a given RFC level, it may be possible to utilize the grids without soliciting a VE, but in those situations the ALJ must make a specific factual finding to that effect with substantial evidence in support.  *See* Sryock v. Heckler, 764 F.2d 834, 836–37 (11th Cir. 1985).  In this case, other than the AC's singular statement that Plaintiff could perform "a limited range of sedentary work" (Tr. 18), there is no specific finding about the range of work Plaintiff could or could not perform.

testimony was not a reliable basis for the AC's conclusion regarding Plaintiff's ability to perform available jobs.

Where the VE's testimony derives from a hypothetical question that does not include or otherwise implicitly account for all of the claimant's impairments, that testimony is not "substantial evidence" and cannot support a finding on the ability to perform significant numbers of jobs in the national economy.   Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1181 (11th Cir. 2011).  Where, as here, a claimant has been determined to have moderate limitations in concentration, persistence, and pace, merely restricting the hypothetical question to simple, routine tasks or unskilled work is insufficient to account for these limitations.  *Id.*   Here, the AC drew its conclusions from VE testimony that related to an individual with moderate limitations in concentration, persistence, and pace, but with a greater ability

to perform tasks than what the AC actually determined Plaintiff to possess.[10] Accordingly, the finding was in error, and the instant case should be remanded on this basis.

Secondarily, the court addresses Plaintiff's claim that the particular medical findings from Dhvanit Vijapura, M.D., Plaintiff's treating psychiatrist, and Mr. Gregory Gast, a Licensed Mental Health Counselor who also provided ongoing treatment, that Plaintiff could not perform detailed work was not accounted for in the RFC assessment, nor was it included  in the hypothetical questions posed to the VE. As with the claim first addressed by the court, this claim is also presented by Plaintiff in relation to the findings of the ALJ and therefore may be impacted by the superceding findings of the AC.  It is noted that this limitation against detailed work is also absent from the AC's RFC findings, although it may be the case that the AC's finding that Plaintiff could not do more than simple, routine, repetitive tasks

---

[10] Defendant appears to contend that <u>Winschel</u> and its progeny stand for the proposition that this greater impairment can be implicitly accounted for if it is otherwise supported in the record. However, in every one of the cases that Defendant cites (*see* ECF No. 35 at 15–17), the implication did not derive independently from other evidence in the record; rather it was the ALJ's questioning of the VE that implicitly conveyed the limitation so that the VE could properly respond. *See, e.g.,* <u>Washington v. Social Sec. Admin., Com'r</u>, 503 F. App'x 881, 883 (11th Cir. 2013); <u>Scott v. Commissioner of Social Sec.</u>, 495 F. App'x 27, 29 (11th Cir. 2012).  And how the VE was questioned is of course the main concern in the instant case.

represents an accommodation of this limitation.  Such an accommodation is not expressed in the opinion, however.

Defendant argues that, under the Dictionary of Occupational Titles (DOT), the jobs identified for Plaintiff—packer, assembler, and addresser—require a Reasoning Development level of 2, which in turn requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."  Dictionary of Occupational Titles, § 559.687-014, 1991 WL 683782 (ampoule sealer or "packer"), § 739.684-094, 1991 WL 680137 (lamp-shade assembler), § 209.587-010, 1991 WL 671797 (addresser).  As this court found in a previous case, courts have generally held that a Reasoning Level 2 or even 3 under the DOT is not inconsistent with the ability to perform only simple, routine, and repetitive work tasks.  *See* Gray v. Colvin, No. 3:12cv506/EMT, 2014 WL 1118105, at *8–9 (N.D. Fla. Mar. 20, 2014) (collecting cases).  Further, since the identified jobs are described by the DOT as "detailed but uninvolved" work with "few concrete variables," they appear to involve a lesser measure of complexity than the "detailed" work that Dr. Vijapura and Mr. Gast determined Plaintiff to be incapable of, and to that extent these jobs could fairly be said to be compatible with the "credit" given to Dr. Vijapura's and Mr. Gast's restrictions.  Nevertheless, given the fact that this issue

is fairly intertwined with the previous one, and because the instant remand may result in further and/or altered findings that impinge upon this issue, the court does not reach a conclusive finding on the issue.

Likewise, the court does not reach Plaintiff's last issue, which asserts that the ALJ erred by assigning little or no weight to parts of the opinion of Dr. Vijapura as Plaintiff's treating psychiatrist, who among other things stated that Plaintiff's mental health impairments would cause her to be absent from work three times per month and indicated in his medical notes that Plaintiff frequently had a GAF score of 45 during her period of eligibility for benefits.  In response, Defendant asserts that the ALJ properly discounted Dr. Vijapura's opinions as inconsistent or inaccurate in light of the medical record.  Because the AC's modification of the ALJ's decision is subject to change or clarification if this recommendation is adopted, and in light of the fact that the AC found Plaintiff to be less able to perform tasks than the ALJ, the court finds that the analysis of Dr. Vijapura's opinion might also be subject to change, which would moot any finding currently made by the court.

In conclusion, for the reasons provided above, this case should follow the general rule that, when errors occur, to reverse and remand for additional proceedings. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223–24 (11th Cir. 1991).

Accordingly, it is **ORDERED**:

Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

And it is respectfully **RECOMMENDED**:

1.      That the Commissioner's decision denying benefits be **REVERSED**.

2.      That this case be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

At Pensacola, Florida, this 23rd day of February 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**